## Smith, *et al.* vs. Smith, *et al.*

1808.
June

Smith
vs
Smith

*T T, by his will dated in 1795, devised his lands to be eq tally divided between his two nephews, W C. and W S, to them and their heirs forever; and in case WC. die without lawful issue, then he devised one half of the lands to his nephew GS, to him and his heirs forever. Held, as to a moiety of the lands devised to WC, that on his death without lawful issue, the estate tail became extinct—and the limitation over to GS took effect, and one moiety of the lands vested in him in fee simple.*

*The act of 1786, ch 45, to direct descents, as to estates tail general, and for transmitting the tenancy in tail to the issue of the tenant, is altered or changed only, by making the land descendible to all the children of the tenant in tail and their respective issue indefinitely.*

APPEAL from the Court of Chancery. The bill filed by the appellants stated that *William Crandell,* being seized in fee of a tract or tracts of land situate in *Anne-Arundel* county, did, by his will dated in 1795, devise the same in fee tail general to *William Crandell,* of *Adam,* and to *William Smith;* and in case the said *William Crandell* should die without lawful issue, then he devised one half of the land to his nephew *Gilbert Smith.* The devise is as follows: "I devise and bequeath unto my dear wife *Emelia,* during her widowhood, all my tract of land known by the name of *Grammer's Parrot,* and at the day of her death or marriage, I leave the above mentioned tract of land to be equally divided between my two nephews, *William Crandell,* son of *Adam,* and *William Smith,* to them and their heirs for ever; and in case the above named *William Crandell* dies without lawful issue, then I give one half of the above mentioned tract of land to my nephew *Gilbert Smith,* to him and his heirs for ever." The testator died shortly after the date of the will, without changing or revoking it; and a few years thereafter, both the devisees died minors, and without issue. The testator had no issue, but had one brother and sister of the whole blood, and one brother of the half blood. The brother of the whole blood was named *Adam Crandell,* who died before the testator, leaving two children *William,* the devisee, and *Sarah;* the last of whom died a minor, and without issue. *Sarah,* the sister of the testator of the whole blood, married one *Nathan Smith,* by whom she had five children, viz. the complainants, *Elizabeth* and *Sarah,* and *Gilbert Smith,* the person named in the will, and *Hannah* and *Sophia Smith,* (minors,) the defendants. The complainants stated in their bill, that they were advised, that on the above facts, the disposition over to *Gilbert Smith* was void, and that all the property devised to the two devisees, had descended to or devolved on them by virtue of the act of descents; but that on account of the minority of two of the heirs, a sale or division could only be effected in this court. They also stated, that *William Crandell,* the devisee, was seized in fee of other land, which, on the above facts, descended as before stated; and that the land could only be sold or divided by this court. *Prayer* for a sale of the lands, or

a partition thereof, as on a consideration of all circumstances should seem most advisable, &c. Upon the coming in of the answers of the defendants, which admitted the facts as to the descent, the defendant, *Gilbert*, submitted the legal construction and operation of the will to the chancellor, and he, in pursuance of the act of 1806, *ch.* 55, requested the opinion of the honourable *Jeremiah Townley Chase*, Chief Judge of the third judicial district, on the question, "Whether the disposition over to *Gilbert Smith* was *void*, so as to leave the land to descend to the five heirs of *Sarah Smith*, as alleged in the bill; or whether, by the death of *William Crandell*, of *Adam*, without lawful issue, the devise of half the land to *Gilbert Smith* was effectual to give him a title thereto, or, (according to the question raised by the counsel for the complainants,) whether the devise took effect immediately on the death of *William Crandell*, or whether the land descended to the whole of the heirs of *William Crandell?*"

Upon this submission and request, the question was argued before Judge *Chase*.

*Johnson*, (Attorney General,) for the complainants. The only question in this case is, whether an estate tail general, created since the year 1788, when the act to direct descents, (1786, *ch.* 45,) took effect—remainder in tail, will, on the death of the first tenant in tail, descend to his collateral heirs, or whether, on the death of the tenant without issue, and without docking the entail, the right of the remainder-man will take effect in possession? The case is this—land is devised to *William Crandell*, and in case he dies *without issue*, then to *Gilbert Smith.* *Crandell* died without issue, but leaving other heirs besides *Gilbert Smith*, capable of inheriting under the act to direct descents, if he had had the fee simple. But he only held an estate tail—Are then those heirs, who could have inherited if he had died seized in fee, entitled to any part of the *estate tail*, or will the property go over to the remainder-man, *Gilbert Smith?* Previous to the act to direct descents, it is clear none but the issue of the tenant in tail could inherit; if there were no issue, the remainder would take effect. It is plain and evident the will gave an estate tail general to *William Crandell*; for in all cases where the issue generally, that is male or female, can in-

herit the estate tail, there it is an estate tail general, whether there is a limitation over or not. To prove this authorities are not necessary. If then *William Crandell* had an estate tail general, on his death who were entitled? By the act to direct descents, it is expressly enacted, if any person seized in fee or of *a fee tail general,* shall die intestate, the land shall descend as in the act prescribed. The subsequent clauses in the act declare, that what is previously enacted with respect to the land in tail, shall not extend to any estate tail, *made, created and in being,* before the passage of the act. The reverse of the proposition is equally true, that the provisions respecting the estates tail *made, created and in being,* after the passage of the act, shall be affected by its provisions. But *William Crandell* obtained an estate in tail general after the act, and therefore that estate is affected by the act; and if this be true, which appears self-evident, then it follows, on his death intestate, the right he had in the land descended to those persons made capable of inheriting by the act, and in the proportions there provided for. Previous to this act none but the issue could inherit an estate tail. As then the issue alone inherited by the provisions of pre-existing laws, and as the legislature in 1786, when the act to direct descents passed, were equally competent to make other persons besides the issue capable of inheriting, and as by that law they have done so to affect cases commencing after its operation, it surely follows, that those made capable of so inheriting are entitled to the respective portions of the land. If additional reasoning was deemed necessary to support the above principles, and if any other part of the act need be resorted to in proof of the construction contended for, the *sixth section* will make it clear. That section declares, that that law shall not extend to affect any grant or devise of land to "*special or particular heirs;*" that is, to affect any *estate tail special.* But the exception of the *estate tail special* proves the *estate tail general* to be included; for the exception proves the general rule. It may be supposed that estates tail general are embraced by it, so far as to let in *all the issue* of the tenant in tail, but not to affect collaterals. This interpretation is inadmissible. For surely, if the law was competent to bring in with the eldest the youngest son of the tenant in tail, it was equally competent

1808

Smith
vs
Smith

to introduce the collateral heirs, as persons capable of in-heriting the estate. The question then is, has not the act done so? It provides that "if any person seized of an estate in any lands, &c. in fee simple, or fee simple conditional, heretofore or hereafter acquired, or of an estate in fee tail to the heirs of the body generally, created and acquired after the commencement of the act, shall die intestate, such lands, &c. shall descend to the *kindred*, male and female, in the following order, to wit: First to the child or children, and their descendants, if any, equally, and if no child or descendant, then to the father, and if no father living, then to the brothers and sisters of the intestate,"[22] &c. It is certain that this act was not prepared with due reflection; for we find in the clause above in part recited, a distinction made between estates in fee simple conditional, and estates in tail general, the former, although created before the act, are operated on by it, the latter not; and yet it is clear, at the time the law passed, there could be no such thing as an estate in fee simple conditional. All such estates were by the statute of *Westminster* converted into estates tail either general or special. Again, in the same clause we find a provision made that lands, which have descended from the father to the son, shall on the death of the son without issue, go to the father; but it is certain land could not descend to the son until the father died, and if so, none but the maker of the law can tell how they could ever go back again to him. *Co. Litt.* 19. But let the act be ever so inaccurately drawn, yet when the language is plain, its provisions, however absurd, must be carried into effect. Nothing then is more plain than its language, which says, it the tenant in tail general shall die intestate, without leaving issue, or father, the land shall go *to the brothers and sisters*, and their descendants. The course of descent pointed out by the act extends to all the previous estates mentioned—fee simple, fee simple conditional, and fee tail general. From what part of the act can it be inferred, when in this part it is said they shall descend in one general uniform manner without respect to the previous estate, that the rules of descent prescribed are confined in their full extent to one species of estate, the fee simple? It does not declare where an estate tail general is created after the act, if the tenant in tail shall fail to leave *issue*, that then the estate shall go to a

remainder-man or reversioner. On the contrary it says, the previous estate shall not cease while persons exist made capable of inheriting. Is it not certain the whole comprehends all its parts? And as there are three kinds of estates, fee simple, fee simple conditional, and fee tail general, they are the respective parts of that whole on which the law operates, and operates by declaring in certain events the brothers and sisters may inherit. In the case under consideration, these events did take place. Before the passage of this law, the tenant in tail could totally defeat the remainder over. A deed executed by him would have that effect. The deed obtains that effect by a previous law. The act to direct descents only places his interest in the power of more persons, by making more persons capable of inheriting. If the legislature had the right to do the one, they could do the other. They have most clearly done the first, and it is equally evident they have done the last.

*Ridgely*, for the Defendants.

CHASE, Ch. J. certified the following opinion to the Chancellor: On the question of law, submitted to my decision by the honourable the chancellor, arising in this case under the will of *William Crandell*, and the act to direct descents, (1786, *ch.* 45,) it appears to me that the true construction of that act, as to estates tail general, created and acquired after the commencement of it, is, that the course or manner of transmitting the tenancy in tail to the issue of the tenant, is altered or changed only by making the land descendible to all the children of the tenant in tail, and their respective issue, indefinitely, and not the eldest son, in the first instance, in exclusion of the other children. It could not be the intention of the legislature to abolish estates tail general, or remainders limited thereon, and to convert them into fee simple estates by giving them the same properties.

The words of the act must receive such an exposition as they are capable of, and must be so construed as to carry into effect the evident intention of the legislature. That part of the act which relates to the collateral relations of the intestate, cannot apply to a tenancy in tail, because such estate cannot descend to collaterals. As soon as the

tenant in tail dies without issue, his estate and interest in the land ceases, and in the same instant the limitation over, on the extinction of the estate tail, vests in the remainder-man, and no estate remains in the tenant in tail, which is transmissible to his collateral relations.

According to my judgment, it was not in the contemplation of the general assembly to alter or change the nature of an estate tail in any other respect than by making it descendible to all the children, and this is plain from the *sixth section* of the act. It certainly could not be contemplated by the legislature to give the estate tail an existence after the failure of the issue of the tenant in tail, contrary to the nature of the estate, and the words of the grant, and in violation of the rights of the remainder-man.

The words of the law must be expounded according to the subject matter, and that part which relates to collateral relations must *ex necessitate rei*, be confined to estates in fee simple, and cannot comprehend estates which have no existence at the time of the decease of the intestate.

I am of opinion, in this case, as to a moiety of the land devised by *William Crandell*, that on the death of *William Crandell*, of *Adam*, one of the devisees, without lawful issue, the estate tail became extinct, and the limitation over to *Gilbert Smith* took effect, and one moiety of the land vested in him in fee simple.

KILTY, Chancellor, thereupon passed the following decree: The object of the bill in this cause is to obtain a decree for the sale or partition of certain lands therein mentioned, which are alleged to have descended to, or devolved on, the complainants and defendants, as the children of *Sarah Smith*, who was the surviving sister of *William Crandell*, but which lands could not be sold or divided on account of the minority of two of the said heirs. (The chancellor here stated the facts of the case and then proceeded.)

After hearing the arguments of the counsel on the trial, the chancellor considered it the most proper course to request the opinion of the chief judge of the third judicial district, as he is empowered by law to do. And on this request, and the answer thereto, which are among the proceedings, the opinion of the chief judge was declared as follows: "As to a moiety of the land devised by *William*

*Crandell*, that on the death of *William Crandell*, son of *Adam*, one of the devisees, without lawful issue, the estate tail became extinct; and the limitation over to *Gilbert Smith* took effect, and one moiety of the land vested in him in fee simple."

In conformity to the opinion thus expressed—*Decreed* by the chancellor, that the complainants are not entitled to a sale or partition of that part of the land of *William Crandell* which by the will was devised to *Gilbert Smith*, in case *William Crandell* therein mentioned should die without lawful issue, and that a decree for such sale or partition ought not to be made.

The decree goes on to direct a sale of the other land.

The complainants appealed to this court. But the case having been compromised, it was at the present term,

DISMISSED.